IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CARLOS A. ALMANZA,
        Plaintiff,

vs.                                                                  No. CIV 97-211 MV/LCS

UNITED PARCEL SERVICE,
        Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant United Parcel Service's Motion for Summary Judgment, filed November 21, 1997 **[Doc. No. 54]**, Defendant's Motion to Strike Affidavits, filed December 18, 1997 **[Doc. No. 59]**, and Defendant's First Motion in Limine, filed December 24, 1997 **[Doc. No. 63]**. The Court, having considered the responsive pleadings, relevant law, and being otherwise fully informed, finds that the summary judgment motion is well taken and will be **granted in part** and **denied in part**, but that Defendant's other motions are not well taken and will be **denied**.

### Background

Mr. Almanza has sued United Parcel Service ("UPS") over his January, 1996 termination. A 17 year employee of UPS who worked his way up to a supervisory position, Mr. Almanza has alleged several bases of wrongful termination. Although he filed a broad complaint, the Court has previously dismissed various issues so that the only ones now remaining are whether UPS discharged

Mr. Almanza in violation of an implied employment contract or in a retaliatory fashion.[1]

With respect to his contract count, Mr. Almanza alleges that various UPS employees, upon his promotion from an hourly employee to management status, assured him that he could only be terminated for the "cardinal sins" of dishonesty, drunkenness, or having a sexual encounter while on UPS premises, although he can not recall specific conversations, except for one that occurred with supervisor Ed Lujan when Mr. Almanza was still an hourly employee.[2] Mr. Almanza also states that his long tenure with UPS and his regular salary increases and promotions support his contractual claim. In addition, relying on the written provisions of the UPS employee manual for his claim of an implied employment contract, Mr. Almanza explains that it was "just plain common knowledge" that UPS would only terminate employees for cause, and claims that UPS has a 30-60-90 policy, whereby an employee would receive progressive discipline in the event that his actions put his job at jeopardy. Mr. Almanza also explains that UPS is an employee-owned company, and that UPS managers hold UPS stock. In addition to his deposition and affidavit, Mr. Almanza offers UPS's employee manual and the depositions and affidavits of other UPS employees as support for his claim.

For his retaliatory discharge claim, Mr. Almanza solely alleges that he believes UPS terminated him for his refusal to give false testimony at the August 16, 1995 grievance hearing of Robert Benavidez, another employee. On June 22, 1995, Mr. Almanza terminated Mr. Benavidez for misconduct and dishonesty. In his deposition, Mr. Almanza admits that no UPS supervisor asked

---

[1] On stipulation of the parties the Court has dismissed Mr. Almanza's due process and liberty interest claims [Doc. No. 24], and pursuant to UPS' Rule 12 (b)(6) motion the Court has dismissed Mr. Almanza's discriminatory discharge claim while refusing to dismiss the contract and retaliation counts [Doc. No. 34 and 46].

[2] Mr. Almanza provides conflicting testimony here. In his deposition he states that Mr. Lujan provided guarantees while Mr. Almanza was still an hourly driver, but in his affidavit Mr. Almanza states that Mr. Lujan promised termination only for cause after Mr. Almanza had joined management ranks.

him to falsely testify at the August hearing, but that after the hearing his supervisor, Mr. Rick Lewis, was upset because Mr. Almanza did not participate. Yet Mr. Almanza admits to knowing of Mr. Benavidez's conduct before June 22 and states in his deposition that UPS should not have reinstated Mr. Benavidez. Mr. Almanza's retaliation claim encompasses only these events.

Admitting that it usually fires employees only for good reason, UPS claims that Mr. Lewis terminated Mr. Almanza because he could no longer trust him as a supervisory employee, citing instances where a driver Mr. Almanza supervised was not notified of a death in his family, where Mr. Almanza inappropriately threatened Silver City employees with termination, where Mr. Almanza refused to re-certify Silver City package driver Aaron Chavez, where Mr. Almanza did not follow procedures in hiring a temporary employee, where Mr. Almanza wrongfully allowed a temporary employee access to UPS funds with the eventual embezzlement of $13,000, and where Mr. Almanza did not speak up at the Benavidez termination hearing despite having knowledge of Mr. Benavidez's conduct. Moreover, UPS argues that none of Mr. Almanza's claims are sufficiently explicit to rebut the presumption that he was an at-will employee. Finally, UPS avers that Mr. Almanza's retaliatory discharge argument is insufficient as a matter of law.

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order

to obtain summary judgment." Allen v. Muskogee, Oklahoma, 119 F.3d 837, 840 (10th Cir. 1997), cert. denied, 118 S.Ct. 1165 (1998), citing Celotex v. Catrett, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, Allen, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law. Id. at 839, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the like that there is a genuine issue for trial. Allen, 119 F.3d at 841, citing Celotex, 477 U.S. at 324. Conclusory allegations are not enough. Adler v. Wal-Mart Stores, Inc., _ F.3d _, 1998 WL 247700 *4 (10th Cir. 1998).

Under this standard, UPS has met its burden of showing that there is no genuine issue of material fact for Mr. Almanza's retaliatory discharge claim, and Mr. Almanza has failed to demonstrate otherwise. To show retaliatory discharge under New Mexico law, Mr. Almanza would need to prove at trial that he performed an act that public policy would authorize or encourage and that there exists a causal connection between his actions and UPS' discharge for those actions. Shovelin v. Central N.M. Elec. Co-Op., 850 P.2d 996, 1006 (N.M. 1993). UPS has met its burden of demonstrating an absence of evidence to support Mr. Almanza's claim. Simply, Mr. Almanza has only alleged that he believes Mr. Lewis retaliated against him for his silence at the Benavidez grievance, and that he could not speak against Mr. Benavidez at the hearing because of his lack of personal knowledge of Mr. Benavidez's conduct. Yet that last claim is inconsistent with Mr. Almanza's admission that he knew on July 22 that Mr. Benavidez had acted contrary to UPS policy. Mr. Almanza admits Mr. Lewis never asked him to lie in an effort to justify Mr. Benavidez's

termination, and catalogs in his deposition his basis for the June 22 termination of Mr. Benavidez. Thus, whereas in addressing Defendant's 12(b)(6) motion to dismiss the retaliatory discharge claim the Court was bound to accept Mr. Almanza's allegation of retaliation as true, under the summary judgment standard the Court must recognize this claim for what it is: a conclusory allegation that fails to meet the nonmovant's burden.

The contractual claim is more complex. New Mexico, of course, follows the common law rule that employment is presumed to be at-will and terminable by either party for any or no reason without liability. Hartbarger v. Frank Paxton Co., 857 P.2d 776, 779 (N.M. 1993), cert. denied, 510 U.S. 1118 (1994). In addition, New Mexico recognizes that the words and conduct of the parties in an employment relationship, including provisions in a personnel manual or handbook, can create an implied-in-fact contract. Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1233 (N.M. 1989). Disclaimers in a personnel manual will not suffice to negate other indicia that an implied contract exists, Kiedrowski v. Citizen's Bank, 893 P.2d 468, 470-71 (N.M. Ct. App. 1995), cert. denied, 890 P.2d 1321 (N.M. 1995), but an employer's conduct must reasonably lead employees to believe that they will not be terminated without just cause and a fair procedure. Id. An employee's vague impression or general feeling of continued employment is not sufficient to create an employment contract, Garrity v. Overland Sheepskin Co. of Taos, 917 P.2d 1382, 1385 (N.M. 1996), and to prevail on an implied contract claim a plaintiff must show explicit promises or assurances of job security, not merely a declaration of the employer's general approach to the subject matter. Sanchez v. New Mexican, 738 P.2d 1321, 1324 (N.M. 1987). Generally, the existence of an implied contract is a question of fact unsuited for summary judgment, but for employee expectations to be reasonable they must satisfy a certain measure of objectivity. Kiedrowski, 893 P.2d at 471. Thus, while "[a]n

5

inquiry into whether an implied employment contract exists is normally factual... if the alleged promises are nothing more than vague assurances, however, the issue can be decided as a matter of law." Dupree v. United Parcel Service, Inc., 956 F.2d 219, 222 (10th Cir. 1992).

    Mr. Almanza here comes perilously close to the entry of summary judgment against him on his implied contract claim. To support that claim, Mr. Almanza has pointed to his long years of service, including the commendations and promotions he has received and the lack of any direct criticism of his work, to the UPS employee manual, to general assurances from his supervisors and fellow managers, to his status as a manager-owner at UPS, to the specific assurance of Mr. Ed Lujan made when Mr. Almanza was still an hourly employee, and to the 30-60-90 disciplinary policy. In addition, Mr. Almanza has presented affidavits by former UPS employees Patsy Malm and Luis Perez which essentially track Mr. Almanza's own assertions in his affidavit. Even considering that in overcoming the at-will "presumption, it is not any single act, phrase or expression, but the totality of all of these, given the parties' situation and objectives, which will control," Kestenbaum v. Pennzoil Co., 766 P.2d 280, 286 (N.M. 1989), cert. denied, 490 U.S. 1109 (1989), of all these allegations only UPS' 30-60-90 rule clearly supports the claim of an implied contract.

    Almost all of Mr. Almanza's allegations are either insufficient as a matter of law or not explicit enough to survive summary judgment. Mr. Almanza's claim that the UPS manual provides evidence of a contract is effectively precluded by case law. Dupree, 956 F.2d at 222; Smith v. United Parcel Service, Inc., No. CIV 93-1273, slip op. at 5 (D. N.M. Dec. 1, 1994) (Burciaga, J.). Mr. Almanza's long tenure at UPS, lack of direct criticism, alleged status as a manager-owner, or UPS' admission that it usually fires employees only for good reason are themselves not a guarantee of employment. See Hartbarger, 857 P.2d at 785. Mr. Lujan's purported assurances of job security

even if true are irrelevant, since Mr. Almanza concedes that they were made while he was still an hourly employee protected by a collective bargaining agreement.

The affidavits of UPS employees Patsy Malm and Luis Perez, although supporting Mr. Almanza's claims, are strikingly similar and, like Mr. Almanza's affidavit, provide only generalized allegations of assurances of employment security that do not appear to reflect the sufficiently explicit nature of conduct that New Mexico law requires for the creation of an implied contract.  See Sanchez, 738 P.2d at 1324.  Indeed, the conduct Mr. Almanza describes seems non-promissory in nature and "merely a declaration of [D]efendant's general approach to the subject matter discussed." Id.  Likewise, the Malm and Perez affidavits, with their close resemblance to Mr. Almanza's own, present generalized allegations without specific supporting facts relevant to New Mexico law, and therefore have thin probative value.  See Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir. 1995).  But examining the record in a light most favorable to Mr. Almanza, the Court finds that with these affidavits, Mr. Almanza has shown a genuine issue of material fact.

Moreover, Mr. Almanza has brought forth clear evidence that persuades the Court not to grant complete summary judgment.  UPS generally follows certain procedures when disciplining an employee by using its 30-60-90 rule.  As Mr. Lewis has explained this rule, which is usually directed at the supervisory ranks, UPS applies progressive discipline by first warning an employee and allowing 30 days for correction, then discussing improvements at the 30 day mark and allowing the employee who has progressed to continue working for another 30 days, with the discussion process repeated again to the conclusion of 90 days.  Mr. Lewis also admits that he did not give Mr. Almanza the benefit of that rule and its structured, procedural protections.  UPS personnel director Mary Mason and Center Manager Greg Taylor also testified on UPS' use of the rule.  Thus, because New

Mexico law allows for the creation of an implied contract where there are established procedures for termination, Hartbarger, 857 P.2d at 779 (citations omitted), there is a genuine issue of material fact present here which precludes summary judgment.

UPS complains, in its motion to strike affidavits and its first motion in limine, of unfair surprise by Mr. Almanza's late inclusion on his witness list of persons not indicated to be witnesses in the initial pretrial report. UPS also complains that some affidavit testimony is inadmissible hearsay. With respect to the alleged hearsay testimony, Mr. Perez's affidavit contains what is easily construed as party opponent statements by employees of UPS. With respect to the late disclosure of witnesses, the Court concurs that Mr. Almanza should have been more forthcoming. Yet because this matter is not set for trial and because a trial date is uncertain due to the parties' wish to have the Court hear this matter in Las Cruces, any prejudice to UPS that the late witness designation created can easily be corrected through the allowing of additional depositions.

**THEREFORE,**

**IT IS HEREBY ORDERED,** that Defendant's Motion to Strike Affidavits, filed December 18, 1997 **[Doc. No. 59]**, and Defendant's First Motion in Limine, filed December 24, 1997 **[Doc. No. 63]** be, and hereby are, **denied**, and that Defendant United Parcel Service's Motion for Summary Judgment, filed November 21, 1997 **[Doc. No. 54]** be, and hereby is, **granted in part**.

**IT IS FURTHER ORDERED** that Plaintiff fully cooperate with Defendant in allowing Defendant United Parcel Service to depose, within 30 days of the filing of this order, the following persons: Patsy Malm, Belinda Delgado, JoAnne Cooke, Dave Melendez and Frank Knoop, if

Defendant has not already done so.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

July 28, 1998

<u>Counsel for Plaintiff</u>  
Stewart W. Forbes , Esq.

<u>Counsel for Defendant</u>  
Mary A. Woodward , Esq.  
Duane C. Gilkey , Esq.